WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Skylar Simpson,<br><br>    Plaintiff,<br><br>v.<br><br>Mark E Hall PC, et al.,<br><br>    Defendants. | No. CV-25-00081-PHX-SMB<br><br>**ORDER** |

    Pending before the Court is Defendants Mark E. Hall, P.C., Mark E. Hall, Jane Doe Hall (collectively, "Hall"), Robert Levin, Jane Doe Levin (collectively, "Levin"), and Safeguard Estate and Financial, LLC's ("Safeguard") Motion to Dismiss (Doc. 11) Plaintiff Skylar Simpson's Complaint (Doc. 1). Plaintiff filed a Response (Doc. 15), and Defendants filed a Reply (Doc. 18). After reviewing the briefing and the relevant case law, the Court will **grant in part** Defendant's Motion. The Court will grant Plaintiff leave to amend the dismissed claims, except those arising under the Americans with Disabilities Act, the Fair Wages and Healthy Families Act, and the Arizona Civil Rights Act.

**I.    BACKGROUND**

    On September 21, 2021, Plaintiff began working for Mark E. Hall, P.C. as an estate planning paralegal. (Doc. 1-1 ("Compl."); Compl. ¶¶ 1–2, 8, 25.) To facilitate its estate planning practice, Hall used Safeguard to provide certain client services. (*Id.* ¶ 10.) Safeguard did not supervise Plaintiff. (*See generally id.*)

    Beginning in early 2023, Levin, a Safeguard employee, subjected Plaintiff to

repeated and escalating sexual harassment. (*Id.* ¶ 26.) Levin would enter Plaintiff's office uninvited, close the door, and would tell sexual stories, make sexual gestures, and pretend to pull his pants down. (*Id.* ¶¶ 27–28.) Levin's actions caused Plaintiff to fear for her and her unborn child's safety. (*Id.* ¶ 28.)

On May 12, 2023, Plaintiff reported the harassment to a co-owner of Safeguard. (*Id.* ¶ 29.) Plaintiff alleges that Safeguard failed to take meaningful action to address Levin's behavior. (*Id.*) Plaintiff also reported Levin's actions to Hall via text. (*Id.* ¶ 30.) On May 24, Hall summoned Plaintiff to his office to discuss the allegations. (*Id.* ¶ 31.) In that meeting, Hall berated Plaintiff for reporting the harassment and declared that, unless Plaintiff was physically sexually assaulted, there was "nothing to be done." (*Id.* ¶ 32.)

Hall terminated Plaintiff on July 10, 2023. (*See id.*; Doc. 11-1 at 2.) Plaintiff filed an intake inquiry with the Equal Employment Opportunity Commission ("EEOC") on August 2, 2023, and an EEOC charge of discrimination (the "EEOC Charge") on March 11, 2024. (Compl. ¶ 48.) Plaintiff's EEOC Charge alleged sexual and sex-based harassment. (Doc. 11-1 at 2–3.) On August 21, 2024, the EEOC dismissed Plaintiff's charge because Hall does not employ the requisite number of employees for Title VII of the Civil Rights Act of 1964 ("Title VII") or the Americans with Disabilities Act ("ADA") to apply. (*Id.* at 6.)

Plaintiff filed this lawsuit on November 19, 2024, in Maricopa County Superior Court, and Defendants removed it to federal court. (Doc. 1-1; Doc. 1.) Plaintiff brings claims under the ADA, Title VII, the Arizona Civil Rights Act ("ACRA"), the Fair Wages and Healthy Families Act ("FWHFA"), and Arizona common law. (*See generally* Compl.)

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This exists

if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

III. **DISCUSSION**

    **A. The ADA and Title VII**

        1. <u>Employee-numerosity requirement</u>

Defendants assert that the Title VII and ADA claims ought to be dismissed for lack of jurisdiction because Plaintiff did not (and cannot) allege that Hall employs fifteen or more employees.[1] (Doc. 11 at 4.) Plaintiff responds that her allegations of "joint employer liability permits aggregation of employees" of Hall and Safeguard to bring the number of employees over the statutory threshold. (Doc. 15 at 10.)

To be defined as an employer under Title VII, a defendant must have fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. *See* 42 U.S.C. § 2000e(b). Where a single employer may not have fifteen or more employees, a plaintiff may establish an integrated enterprise and aggregate the number of employees from multiple businesses by proving "(1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control." *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 815 (9th Cir. 2002) (Title VII); *Buchanan v. Watkins & Letofsky, LLP*, 30 F.4th 874, 877 (9th Cir. 2022) (ADA).

In this case, the EEOC determined that Hall did not employ the requisite number of employees for Title VII to apply. (Doc. 11-1 at 6.) Though not wholly clear from the Complaint, Plaintiff ostensibly seeks to allege that Hall and Safeguard are an integrated enterprise such that Title VII protections apply. (*See generally* Compl.) The relevant allegations are as follows:

> Safeguard was engaged in business with Mark E. Hall, P.C., collectively providing estate planning services to customers.
> 
> . . . .
> 
> Safeguard and Mark E. Hall, PC., were engaged in the leasing and/or usage of a business establishment.
> 
> . . . .
> 
> [T]o our belief, Mark E. Hall, P.C. was engaged in a joint venture, joint employer, or special employer relationship with Safeguard.
> 
> Mark E. Hall, P.C. and safeguard are both 'employers' of Plaintiff due to their joint venture, agency, joint employer, or special employer relationship.

---

[1] The United States Supreme Court explained that "the threshold number of employees for application of Title VII is an element on a plaintiff's claim for relief, not a jurisdictional issue." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006).

(Doc. 1-1 ¶¶ 10, 12, 15, 19; *see also* Doc. 15-1 (EEOC Inquiry Form stating that Simpson is "uncertain" about Hall's "number of employees").)

The allegations leave many questions unanswered, including how many persons Safeguard employs, the extent of the interrelation between Safeguard and Hall P.C.'s operations, who among the employees managed the business and controlled labor relations and how they did so, and the commonality of ownership and finances. *Cf. Courtland v. Carpenters Local 408, United Bhd. of Carpenters & Joiners of Am.*, CV-07-0331-PHX-SRB, 2008 WL 11338793, at *7 (D. Ariz. Feb. 1, 2008) (finding no integrated enterprise where the plaintiff failed to "make any specific allegations regarding UBC's control over the workforce and labor relations, and fail[ed] to make allegations relevant to the other factors of the integrated enterprise test."). Plaintiff has failed to simply set forth plausible allegations that a Hall and Safeguard engaged in an integrated enterprise. As a result, the Complaint fails to allege that Hall has the requisite number employees for Title VII or ADA to apply to its business. For that reason, the Court will grant Defendants' Motion to Dismiss the Title VII and ADA claims. *See* 42 U.S.C. §§ 2000(e)(b), 12111. The Title VII claim will be dismissed without prejudice. For the reasons discussed in the proceeding section, the ADA claim will be dismissed with prejudice.

2. Administrative Remedies

Critically, Plaintiff did not allege an ADA violation in her EEOC charge. (*See* Doc. 11-1 at 2–3 (alleging sexual harassment, sex discrimination, and retaliation).) In her Response, Plaintiff attached an EEOC Inquiry form submitted to the Phoenix District Office on August 2, 2023. (Doc. 15-1 at 11.) Therein, Plaintiff alleges that her employer retaliated against her based on her disability, which she describes as "mental and pregnancy." (*See id.* at 12.) But when Plaintiff filed her EEOC Charge on March 11, 2024, she did not include a claim for disability discrimination or any other ADA related claim. (Doc. 11-1 at 2–3.)

A "charge" and pre-charge "information" (or inquiry) are separate documents submitted to the EEOC. Title VII regulations explain that "[t]he Commission shall receive

information concerning alleged [Title VII] violations . . . . Where the information discloses that a person is entitled to file a charge . . . the appropriate office shall render assistance in filing of a charge." 29 C.F.R. §§ 1601.6(a); *see also* 29 C.F.R. § 1601.7 (discussing submission of a charge). But, in most instances, the EEOC Charge itself must contain the claims that a potential plaintiff hopes to later bring in federal court. *Chen v. Salt River Project*, No. CV-21-00744-PHX-SMB, 2021 WL 5988595, at *4 (D. Ariz. Dec. 17, 2021) (explaining the requirement that a plaintiff must first file a charge with the EEOC or Arizona Civil Rights Division before bringing an ADA claim in federal court). Some circuits recognize that an inquiry may stand in for a charge, but only when the EEOC forwards the inquiry to the employer to serve as a "Notice of Charge of Discrimination." *See Wilcox v. Corr. Corp. of Am*, 603 Fed. Appx. 862, 864 (11th Cir. 2015).

Here, the EEOC did not send Plaintiff's inquiry to Hall as a separate charge, and Plaintiff filed an EEOC Charge that did not include a disability discrimination claim. The consequence is that Plaintiff has failed to exhaust her administrative remedies as required to pursue her ADA claim in federal court. *See Chen*, 2021 WL 5988595, at *4.

To make matters worse, the deadline for Plaintiff to file with the EEOC has expired. Hall terminated Plaintiff on July 10, 2023, which is the last possible date for an ADA violation to have occurred. The time to file a charge with the EEOC thus began on that same date. *See id.* (citing 42 U.S.C. § 12117(a)). Assuming the extended 300-day filing window applies, the absolute latest Plaintiff could have filed a charge with the EEOC for her ADA claim was May 6, 2024.[2] To date, Plaintiff has not filed such a charge and thus her claim is time barred. The Court will dismiss her ADA claim with prejudice.

---

[2] Arizona has its own state agency empowered to investigate and remedy allegations of discrimination in employment, Arizona is "a so-called 'deferral' state." *Cox v. Global Tool Supply LLC*, 629 F. Supp. 3d 963, 968 (D. Ariz. 2022) (quoting *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 1999). In deferral states, the deadline for a complainant to file her Title VII claim with the EEOC is extended from the ordinary 180 days to 300 days after the challenged practice, provided the complainant first initiates proceedings with the stage agency. *Id.* "But where, like here, the ACRD and EEOC are parties to a worksharing agreement, 'a complainant ordinarily need not file separately with federal and state agencies.'" *Id.* (quoting *Fort Bend County v. Davis*, 587 U.S. 541, 544 (2019)). The complainant "may file her charge with one agency, and that agency will then relay the charge to the other." *Davis*, 587 U.S. at 544.

- 6 -

**B. ACRA**

A prerequisite to bringing an ACRA claim is for an aggrieved employee to file a charge of discrimination within 180 days of the alleged unlawful employment practice. Ariz. Rev. Stat. § 41-1481(A); *Ornealas v. Scoa Indus., Inc.*, 587 P.2d 266–67 (Ariz. Ct. App. 1978). Plaintiff contends that the statute of limitations on her ACRA claim is extended to 300 days because "a state or local agency enforces a law that prohibits the same type of discrimination" and the EEOC and Arizona Civil Rights Division ("ACRD") have a worksharing agreement. (Doc. 15 at 13–14.) This, however, does not alter the plain statutory text of § 41-1481(A), which requires a claimant to file a claim within 180-days. *See Terry v. United Parcel Servs. Inc.*, No. CV-17-04792-PHX-DJH, 2018 WL 8619996, at *2 (D. Ariz. Oct. 4, 2018) ("While the ACRA is modeled after and is generally identical to Title VII of the Civil Rights Act, the ACRA and Title VII do differ in certain respects. One such difference is that Title VII includes an extension of time to file a charge of discrimination to 300 days in deferral states, such as Arizona, while the ACRA does not contain a similar extension." (citation modified)); *Uchikura v. Willis Towers Watson Call Ctr.*, No. CV-22-00002-PHX-DWL, 2022 WL 17552449, at *12 (D. Ariz. Dec. 9, 2022) ("As an initial matter, although both sides suggest that a 300-day limitations period (i.e., the limitations period for exhaustion of federal employment discrimination claims in deferral states like Arizona) applies in relation to all of Plaintiff's claims, Plaintiff's ACRA claim was subject to the 180-day limit.").

Measuring from July 10, 2023—the last day her claim could have accrued—the latest Plaintiff could have filed with the ACRD was January 6, 2024. Plaintiff did not file her charge until March 11, 2024, rendering the claim time barred. Plaintiff's claims arising under the ACRA will be dismissed with prejudice.

**C. FWHFA**

Defendant moves to dismiss Plaintiff's claim under the FWHFA. (Doc. 11 at 8–10.) Plaintiff fails to address Defendant's argument in her Response. (*See generally* Doc. 15.) "This provides an independent basis for granting the motion to dismiss." *Medrano v.*

*Carrington Foreclosure Servs. LLC*, No. CV-19-04988-PHX-DWL, 2019 WL 6219337, at *6 (D. Ariz. Nov. 21, 2019) (citing *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.")). The Court will therefore dismiss Plaintiff's FWHFA claim with prejudice. *See Currie v. Maricopa County Cmty. College Dist.*, No. CV-07-2093-PHX-FJM, 2008 WL 2512841, at *2 n.1 (D. Ariz. June 20, 2008).

### D. Arizona Common Law

Plaintiff brings claims against each Defendant for intentional infliction of emotional distress ("IIED") and negligence. (Compl. ¶¶ 33, 52.)

#### 1. IIED

The three required elements for IIED are: (1) "the conduct by the defendant must be 'extreme' and 'outrageous,'" (2) "the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct," and (3) "severe emotional distress must indeed occur as a result of defendant's conduct." *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987). "In Arizona, conduct necessary to sustain an [IIED] claim falls at the very extreme edge of possible conduct." *St. George v. Home Depot U.S.A., Inc.*, No. CV-04-1210-PCT-LOA, 2007 WL 604925, at *4 (D. Ariz. Feb. 22, 2007) (citation modified). Arizona follows the definition of the "extreme and outrageous conduct" element provided in the Restatement (Second) of Torts § 46 (comment d):

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*See Lucchesi v. Stimmell*, 716 P.2d 1013, 1016 (1986).

Defendants move to dismiss Plaintiff's IIED claim against Hall because it is based upon employment-related actions that do not constitute extreme and outrageous conduct.

1    (Doc. 11 at 10–11 (citing *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559 (Ariz. Ct.
2    App. 1995)).)  Defendants move to dismiss the IIED claims against Safeguard and Levin
3    for substantially similar reasons.  (*See* Doc. 11 at 12–13.)

4    Plaintiff responds that Hall engaged in extreme and outrageous conduct by berating her, dismissing her concerns, and wrongfully terminating her.  (Doc. 15 at 15.)  Plaintiff further contends that her allegations pertaining to Levin's pervasive sexual harassment, including explicit comments, gestures, and intimidating behavior, is sufficient to show extreme and outrageous conduct.  (Doc. 15 at 14.)  As to Safeguard, Plaintiff contends that its knowledge of Levin's conduct, as well as its decision to both hire and retain him, created a foreseeable risk to Plaintiff and others.  (*Id.* at 15.)  As for damages, Plaintiff argues that Defendants' actions caused her severe emotional distress, including anxiety, panic attacks, and a miscarriage.  (*Id.* at 16.)

The relevant allegations in the Complaint are as follows:

> Levin made inappropriate sexual comments and advances including . . . telling Plaintiff sexual stories, making sexual gestures, and pretending to pull his pants down in Plaintiff's presence.
>
> Levin entered Plaintiff's office uninvited, closed the door, and subjected her to further sexual remarks and inappropriate behavior.
>
> . . . .
>
> Plaintiff reported Levin's harassment to a co-owner of Safeguard . . . no meaningful action was taken to address Levin's behavior.
>
> . . . .
>
> Plaintiff also reported the sexual harassment to Hall.
>
> . . . .
>
> Hall subjected Plaintiff to verbal abuse, angrily chastising her for reporting the harassment. He berated her and stated that Levin was an "amazing salesperson" whose value to the company outweighed her complaints. Hall further stated that unless Plaintiff was actually physically sexually assaulted, there was "nothing to be done" about her harassment claim.
>
> Defendants hall, Mark Hall P.C. Safeguard, and Levin or some combination of them, intentionally or recklessly caused Plaintiff emotional distress in that their conduct was extreme and outrageous and their conduct caused Plaintiff to suffer severe emotional distress.

(Compl. ¶¶ 27–33.)

As it pertains to Hall, Plaintiff has failed to state an IIED claim.  In *Mintz*, the court found that it was not extreme and outrageous for an employer to force a woman to return

to work, fail to promote her, and hand deliver a letter reassigning her job duties. 905 P.2d at 563. The Court noted that, even if the employer's actions were "motivated by sex discrimination or retaliation," an IIED claim could not materialize on those facts. *See id.* In this case, Hall berated Plaintiff, dismissed her concerns, and fired her after she reported Levin, the employee of a separate company. Hall's actions, construed as true, are undoubtedly unsavory but are not so extreme or outrageous such that they "exceed[ed] all bounds of decency." *See Mintz*, 905 P.2d at 562–63 ("It is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." (citation modified)). In its current state, the Complaint fails to state a claim for IIED against Hall. Seeing as how this is Plaintiff's first Complaint, the Court will dismiss the claim with leave to amend.

Now, regarding Levin, Plaintiff alleges that he subjected her to sexual harassment over a period of months, which resulted in "severe emotional distress." (Compl. ¶ 33.) Persistent sexual overtures may form the basis of extreme and outrageous conduct for an IIED claim. *See Ford*, 734 P.2d at 585–86; *Coffin v. Safeway, Inc.*, 323 F. Supp. 997, 1005–06 (D. Ariz. 2004) (allowing a claim to proceed where a plaintiff alleged she "was continuously subjected to unwanted sexual harassment over an eight-month period"). Defendants take issue with the specificity of Plaintiff's pleading, contending that merely stating Levin made inappropriate comments and gestures is not enough. (*See* Doc. 18 at 9.) The Court disagrees with Defendants interpretation of the allegations. First, in *Coffin*, the complaint set forth specific statements and actions taking place over seven months that gave rise to plaintiff's IIED claim. *See* 323 F. Supp. at 1004. Plaintiff's Complaint lacks the specificity provided in *Coffin*—i.e., specific statements—but she has alleged that Levin would enter her office uninvited, close the door, tell sexual stories, make sexual gestures, and simulate pulling his pants down. (*See* Compl. ¶¶ 27–28.) These are the types of unwanted sexual advances that show extreme and outrageous conduct. *See Coffin*, 323 F. Supp. at 1006–07; *Lucchesi v. Stimmell*, 716 P.2d at 1016. Moreover, taking a liberal

approach to Plaintiff's pro se pleading and construing the well-pled allegations as true show that Plaintiff has alleged enough factual material, at least as pertains to extreme and outrageous conduct, to give Levin "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standard that forma pleadings drafted by lawyers." (citation modified)).

Like with Hall, Plaintiff fails to state a claim for IIED against Safeguard. As noted, the accused's conduct must "exceed[] all bounds of decency," *Mintz*, 905 P.2d at 562–63, but here, Plaintiff simply maintains that she reported Levin to a Safeguard co-owner on May 12, 2023, and that no meaningful action was taken, (Compl. ¶ 29.) Plaintiff does not expound on what she believes no "meaningful" action to be—which renders her allegations pertaining to Safeguard nebulous and purely subjective. (*See id.*) As it stands, the Court has no information from which it could determine that Safeguard's actions were extreme and outrageous. As a result, the Court will dismiss Plaintiff's IIED claim against Safeguard with leave to amend.

Turning to harm, the Court finds that Plaintiff has sufficiently alleged severe emotional distress. Whether a plaintiff has suffered sufficiently severe emotional distress is analyzed on a case-by-case basis. *See Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 716 P.2d 1013, 1016 (Ariz. 1986). To prevail on the claim, "the distress inflicted [must be] so severe that no reasonable man could be expected to endure it." Restatement (Second) of Torts § 46, cmt. j; *Midas Muffler Shop v. Ellison*, 650 P.2d 496, 501 (Ariz. Ct. App. 1982) ("A line of demarcation should be drawn between conduct likely to cause mere 'emotional distress' and that causing 'severe emotional distress." (citation modified)). Neither physical injury nor a disabling response is required to constitute "severe emotional distress." *Skousen v. Nidy*, 367 P.2d 248, 250 (Ariz. 1961).

The Complaint states that Defendants "caused Plaintiff to suffer severe emotional distress." (Compl. ¶ 33.) It is only in Plaintiff's Response to the instant Motion that she contends Defendants acts caused her anxiety, panic attacks, and a miscarriage. (Doc. 15

at 16.) Allegations of anxiety, panic attacks, and miscarriage may support a claim for IIED. *See, e.g.*, *Nees v. City of Phoenix*, 2022 WL 17976322, at *5 (D. Ariz. Dec. 28, 2022) (finding allegations of PTSD, anxiety, nervousness, and depression sufficient to state an IIED claim); *Pankratz v. Willis*, 744 P.2d 1182, 1186–87, 1190–91 (Ariz. Ct. App. 1987) (depression, headaches, hemorrhoids, and anger sufficient to state an IIED claim). Construing Plaintiff's Complaint liberally and considering her Response brief, she has alleged enough to state the element of severe emotional harm. *Erickson*, 551 U.S. at 94.

As it stands, Plaintiff has stated a claim for relief for IIED against Levin but has failed to state an IIED claim against Hall or Safeguard.

### 2. Negligence

"To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). Whether a duty exists is a matter of law and "[t]he other elements, including breach and causation, are factual issues usually decided by the jury." *Id.*

As an initial matter, Defendants contend that any compensation Plaintiff seeks is barred by Arizona's workers compensation statute. (Doc. 11 at 13.) That statute provides: "The right to recover compensation pursuant to this chapter for injuries sustained by an employee . . . is the exclusive remedy against the employer or any co-employee acting in the scope of his employment." Ariz. Rev. Stat. § 23-1022(A); *see also Gamez v. Brush Wellman, Inc.*, 34 P.3d 375, 379 (Ariz. Ct. App. 2001). Several cases explain that negligence claims seeking compensation for workplace injuries are barred. *See, e.g.*, *Gamez*, 34 P.3d at 379; *Anderson v. Indus. Comm'n*, 711 P.2d 595 (1985); *but see* Ariz. Const. art. XVIII, § 8 (allowing an employee to sue for injuries caused by employer's willful misconduct).

The Court agrees with Defendants that if Plaintiff's claim seeks such relief—bar sufficiently alleging willful misconduct—it is incurably infirm. The problem here,

however, is that Plaintiff's factual allegations are so bare that the Court is not sure what type of negligence claim Plaintiff is pursuing. Put simply, Plaintiff fails to sufficiently allege any element of her negligence claim. Regarding duty, Plaintiff contends that "Defendant[s] owed a duty of care created by common law special relationships and relationships created by statute and public policy." (Compl. ¶ 20.) As to breach, causation, and damages, Plaintiff alleges that "[a]s a direct and proximate result of some or all o the Defendant's individual negligence as aforesaid, Plaintiff has suffered general and special damage for which some or all the Defendants are responsible." (*Id.* ¶ 52.) It is beyond dispute that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Giving Plaintiff the benefit of the doubt, the Court will dismiss the negligence claim with leave to amend.

## IV. LEAVE TO AMEND

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (cleaned up). The Court will afford Plaintiff leave to amend the Title VII claim related to discrimination and harassment, the IIED claim, and the negligence claim. Within thirty (30) days from the date of entry of this Order, Plaintiff may submit an amended complaint. Plaintiff is warned, however, that if her amended pleaded fails to state a claim under Title VII, she will have failed to present a federal question for this Court's review. *See* 28 U.S.C. § 1331. If Plaintiff fails to establish federal question jurisdiction, the Court will lack jurisdiction over her state law claims, as all parties are citizens of Arizona and the amount in controversy, as alleged, does not exceed the required threshold amount. 28 U.S.C. § 1332. Plaintiff's Amended Complaint must address the deficiencies identified above and should follow the form detailed in Rule 7.1 of the Local Rules of Civil Procedure. Plaintiff must clearly designate on the face of the document that it is the "First Amended Complaint." The amended complaint must be retyped or rewritten in its entirety and may not incorporate any part of the original Complaint by reference.

The Court draws attention to the District of Arizona's Federal Court Advice Only Clinic, Federal Court Advice Only Clinic - Phoenix | District of Arizona | United States District Court (uscourts.gov). The Court also notes the E-Pro Se program which assists litigants with creating a complaint form, Welcome - eProSe (uscourts.gov). Lastly, the Court advises Plaintiff that certain resources for self-represented parties, including a handbook and the Local Rules, are available on the Court's website, www.azd.uscourts.gov, by following the link "For Those Proceeding Without an Attorney."

## V. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED granting in part** Defendants' Motion to Dismiss (Doc. 11). The Court will dismiss Plaintiff's Title VII and negligence claims without prejudice. Further, the Court will dismiss the IIED claim against Hall and Safeguard without prejudice. The Court will dismiss the claims under the ADA, FWHFA, and ACRA with prejudice. Defendants' Motion is denied with respect to the IIED claim against Levin.

**IT IS FURTHER ORDERED granting** Plaintiff leave to amend her Complaint. If Plaintiff wishes, she may file a First Amended Complaint no later than thirty (30) days after the date of issuance of this Order.

Dated this 2nd day of September, 2025.

Honorable Susan M. Brnovich
United States District Judge